No. 81–2296. NATIONAL FOOTBALL LEAGUE ET AL. *v.* NORTH AMERICAN SOCCER LEAGUE ET AL. C. A. 2d Cir. Certiorari denied.

JUSTICE REHNQUIST, dissenting.

This lawsuit is an attack under § 1 of the Sherman Act, 26 Stat., as amended, 15 U. S. C. § 1, by the North American Soccer League (NASL) and most of its member teams on the cross-ownership rule imposed by the National Football League (NFL) on the owners of its member teams. The rule, in essence, prohibits NFL owners from obtaining a controlling interest in any other major league professional sports team. The Court of Appeals found that the rule violates § 1 under the Rule of Reason, and enjoined the NFL from enforcing it.

The NASL's complaint alleged that the cross-ownership rule excludes it from a substantial share of the market for "professional sports capital and entrepreneurial skill." The NFL contended that the relevant market was for capital generally, and that the rule does not exclude anyone from a significant share of the capital market. The District Court decided that the relevant market is in between—a market for "sports capital"—but did not define precisely the extent of this market. It then decided that any competition between the NFL and the NASL in that market is competition between two single economic entities. 505 F. Supp. 659 (SDNY 1980). It thus held that § 1 of the Sherman Act does not apply because the NFL is a single economic entity that cannot combine or conspire with itself. *Id.*, at 689.

The Court of Appeals rejected this view. 670 F. 2d 1249 (CA2 1982). It thought "[t]he characterization of NFL as a single economic entity does not exempt from the Sherman Act an agreement between its members to restrain competition." *Id.*, at 1257. See *Perma Life Mufflers, Inc.* v. *International Parts Corp.*, 392 U. S. 134, 141–142 (1968); *Timken Roller Bearing Co.* v. *United States*, 341 U. S. 593, 598 (1951). The Court of Appeals thought the objective of the cross-ownership rule is to protect individual teams as well as the league from competition.

At this point, the Court of Appeals had dealt with the District Court's entire holding. The District Court expressly declined to consider whether the cross-ownership rule violates the Rule of Reason. 505 F. Supp., at 689. The application of the Rule of Reason is to be made by "the factfinder [who] weighs all of the circumstances of a case." *Continental T. V., Inc.* v. *GTE Sylvania Inc.*, 433 U. S. 36, 49 (1977). See, *e. g., Berkey Photo, Inc.* v. *Eastman Kodak Co.*, 603 F. 2d 263, 302 (CA2 1979). The proper course for the Court of Appeals thus would have been to remand for findings by the District Court. However, it proceeded to decide the merits on its own.

The Court of Appeals first decided that there is a market for "sports capital and skill," which is a submarket of the capital market. 670 F. 2d, at 1260. "[A]n owner may in practice sell his franchise only to a relatively narrow group of eligible purchasers, not to any financier." *Ibid.* It did not define this market except to say that it is "not limited to existing or potential major sports team owners," but "is relatively limited in scope and is only a small fraction of the total capital funds market." *Ibid.* It is not clear whether the Court of Appeals was attempting to define the relevant market differently than did the District Court. If it was, it should have applied the clearly-erroneous standard to the District Court's finding rather than substituting its own judgment. *Associated Radio Service Co.* v. *Page Airways, Inc.*, 624 F. 2d 1342, 1348–1349 (CA5 1980); *Martin B. Glauser Dodge Co.* v. *Chrysler Corp.*, 570 F. 2d 72, 82, n. 18 (CA3 1977); *Telex Corp.* v. *International Business Machines Corp.*, 510 F. 2d 894, 915 (CA10 1975) *(per curiam).* See *Pullman-Standard* v. *Swint*, 456 U. S. 273, 287 (1982).

The Court of Appeals then proceeded to apply the Rule of Reason. There is no dispute as to the proper statement of the Rule. "The true test of legality is whether the restraint imposed is such as merely regulates and perhaps thereby promotes competition or whether it is such as may suppress or even destroy competition." *Chicago Board of Trade* v. *United States*, 246 U. S. 231, 238 (1918).

On the basis of the facts as described by the Court of Appeals I seriously doubt whether the Rule of Reason was violated. The Court of Appeals held the cross-ownership rule is anticompetitive because it restricts the access of NASL teams to sports capital, and that this anticompetitive effect outweighs any procompetitive effects of the rule. It rejected the argument that the rule enables NFL owners to compete effectively in the entertainment market by assuring them of the undivided loyalty of fellow owners.

I believe the Court of Appeals gave too little weight to the procompetitive features of the cross-ownership rule and engaged in excessive speculation as to its anticompetitive effect.

The NFL owners are joint venturers who produce a product, professional football, which competes with other sports and other forms of entertainment in the entertainment market. Although individual NFL teams compete with one another on the playing field, they rarely compete in the marketplace. The NFL negotiates its television contracts, for example, in a single block. The revenues from broadcast rights are pooled. Indeed, the only interteam competition occurs when two teams are located in one major city, such as New York or Los Angeles. These teams compete with one another for home game attendance and local broadcast revenues. In all other respects, the league competes as a unit against other forms of entertainment.

This arrangement, like the arrangement in *Broadcast Music, Inc.* v. *Columbia Broadcasting System, Inc.*, 441 U. S. 1 (1979), is largely a matter of necessity. If the teams were entirely independent, there could be no consistency of staffing, rules, equipment, or training. All of these are at least arguably necessary to permit the league to create an appealing product in the entertainment market. Thus, NFL football is a different product from what the NFL teams could offer independently, and the NFL, like ASCAP, is "not really a joint sales agency offering the individual goods of many sellers, but is a separate seller offering its [product], of which the individual [teams] are raw material. [The NFL], in short, made a market in which individual [teams] are inherently unable to compete fully effectively." *Id.*, at 22–23.

The cross-ownership rule, then, is a covenant by joint venturers who produce a single product not to compete with one another. The rule governing such agreements was set out over 80 years ago by Judge (later Chief Justice) Taft: A covenant not to compete is valid if "it is merely ancillary to the

main purpose of a lawful contract, and necessary to protect the covenantee in the enjoyment of the legitimate fruits of the contract, or to protect him from the dangers of an unjust use of those fruits by the other party." *United States* v. *Addyston Pipe & Steel Co.*, 85 F. 271, 282 (CA6 1898), aff'd as modified, 175 U. S. 211 (1899).

The cross-ownership rule seems to me to meet this test. Its purposes are to minimize disputes among the owners and to prevent some owners from using the benefits of their association with the joint venture to compete against it. Participation in the league gives the owner the benefit of detailed knowledge about market conditions for professional sports, the strength and weaknesses of the other teams in the league, and the methods his co-venturers use to compete in the marketplace. It is only reasonable that the owners would seek to prevent their fellows from giving these significant assets, which are in some respects analogous to trade secrets, to their competitors.

The courts have not, to my knowledge, prohibited businesses from requiring employees to agree not to compete with their employer while they remain employed. See, *e. g.*, *Lektro-Vend Corp.* v. *Vendo Co.*, 660 F. 2d 255 (CA7 1981), cert. denied, 455 U. S. 921 (1982). I cannot believe the Court of Appeals would expect a law firm to countenance its partners working part time at a competing firm while remaining partners. Indeed, this Court has noted that the Rule of Reason does not prohibit a seller of a business from contracting not to compete with the buyer in a reasonable geographic area for a reasonable time *after* he has terminated his relationship with the business. *National Society of Professional Engineers* v. *United States*, 435 U. S. 679, 688–689 (1978) (citing *Mitchel* v. *Reynolds*, 1 P. Wms. 181, 24 Eng. Rep. 347 (1711)). It is difficult for me to understand why the cross-ownership rule is not valid under this standard.

The anticompetitive element of the restraint, as found by the Court of Appeals, is that competitors are denied access

to "sports capital and skill." In defining this market, the Court of Appeals noted that although capital is fungible, the skills of successful sports entrepreneurs are not. This entrepreneural skill, however, is precisely what each NFL owner, as co-venturer, contributes to every other owner.

The validity of covenants not to compete does not depend upon the availability to competing firms of similarly qualified individuals, but rests on the principle that competitors may seek to maintain their ability to compete effectively without running afoul of the antitrust laws. The Court of Appeals seems to me to have implicitly adopted the view that businesses must arrange their affairs so as to make it possible for would-be competitors to compete successfully. This Court has explicitly stated the contrary: The inquiry under the Rule of Reason is concerned only with "impact on competitive conditions." *Professional Engineers, supra,* at 688, 690. "The antitrust laws . . . were enacted for 'the protection of *competition,* not *competitors.'*" *Brunswick Corp.* v. *Pueblo Bowl-O-Mat, Inc.,* 429 U. S. 477, 488 (1977) (quoting *Brown Shoe Co.* v. *United States,* 370 U. S. 294, 320 (1962)) (emphasis in original). Indeed, the Second Circuit has applied this principle in the past: "We should always be mindful lest the Sherman Act be invoked perversely in favor of those who seek protection against the rigors of competition." *Berkey Photo,* 603 F. 2d, at 273. The Court of Appeals should have been more mindful of its own admonition.

The Court of Appeals also faulted the NFL for failing to show that its restriction was as narrow as possible. Although the Court of Appeals did not cite any authority for this objection, it seems to be relying on the requirement of *Addyston, supra,* that the restraint be "necessary to protect the covenantee." 85 F., at 282. The Court of Appeals has taken this statement too far by adopting the least restrictive alternative analysis that is sometimes used in constitutional law. The antitrust laws impose a standard of reasonableness, not a standard of absolute necessity. The Court of Ap-

peals ignored its own holding that the proper standard is that the constraint be "'reasonably necessary.'" *Berkey Photo, supra,* at 303 (quoting *American Motor Inns, Inc.* v. *Holiday Inns, Inc.,* 521 F. 2d 1230, 1249 (CA3 1975)). Accord, *Lektro-Vend, supra,* at 265. The Court of Appeals also ignored its own holding that the possibility of less restrictive alternatives is only one among many proper considerations for the factfinder. *Berkey Photo, supra,* at 303.

In any event, it seems to me that the cross-ownership rule is narrowly drawn to vindicate the legitimate interests described above. The owners are limited only in areas where the special knowledge and skills provided by their co-owners can be expected to be of significant value. They are not prohibited from competing with the NFL in areas of the entertainment market other than professional sports. An owner may invest in television movies, rock concerts, plays, or anything else that suits his fancy.

It simply does not appear that the positive effects of the challenged restraint in helping the NFL to compete in the economic marketplace are outweighed by their negative effects on competition. The antitrust laws do not require the NFL to operate so as to make it easier for another league to compete against it. I fear that, under the decision below, the maxim that the antitrust laws exist to protect competition, not competitors, may be reduced to a dead letter.

I would grant certiorari.